IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RODERICK F. FIELDS,

    Plaintiff,

       v.                                                           Case No. 07-3310-JTM

AIMEE HUFFMAN, et. al,

    Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on defendants's motion for summary judgment. (Dkt. No. 122). The plaintiff Roderick F. Fields ("Fields") filed this suit against the defendants Aimee Huffman, Deborah Poston, John Himes, Robert Lambert, and M.H. Hixson alleging they deprived him of his constitutional rights when they failed to protect him from inmate attacks, and demonstrated deliberate indifference to his serious medical needs, all in violation of 42 U.S.C. §1983. (Dkt. No. 108 at 3-9)

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56 (c), the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Summary judgment may be denied where an adequate opportunity to conduct discovery has not been provided. However, the nonmoving party has the burden of showing how additional discovery will enable it to avoid summary judgment. *Universal Money Centers v. American Tel. & Tel. Co.,* 22 F.3d 1527, 1536 (10th Cir. ), *cert. denied,* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994); *Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 537 (10th Cir.1987). Such a showing should be made in the form of an affidavit pursuant to Fed.R.Civ.P. 56.

Fed.R.Civ.P. 56(f) provides in part:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Plaintiff requested the defendants's motion for summary judgment be denied, or in the alternative, that plaintiff be granted additional time for his new counsel to conduct discovery as to those assertions. (Dkt. No. 130 at 2). The plaintiff in his Response addressed many of the defendants's uncontroverted facts with the statement "[u]nable to admit or deny. Plaintiff cannot present facts essential to controvert this statement due to the reasons asserted above pursuant to Rule 56(f)." (*Id.*).

One example of Fields requesting time for additional discovery regarding the defendants's factual assertions is: "three log books of activities in the East A cell house are kept by (1) the control center officer, (2) the floor officer for pods 1 & 2, and (3) the floor officer for pods 3 & 4." (Dkt. No. 123 at 3; Dkt. No. 130 at 2). However, the existence of log books and their locations are not material facts. Accordingly, the plaintiff's motion for Rule 56(f) relief shall be denied.

Fields was an inmate in the custody of the Kansas Secretary of Corrections at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas between June and December 2005. Aimee Huffman, Deborah Poston, Mark Hixson, John Himes, and Robert Lambert were employed at the El Dorado, Kansas facility during the relevant time period.

On September 2, 2005, Fields was struck on the shoulder with a broken mop handle by inmate Willie Smith in the East A cell house. Officer Wilson worked in the East A cell house during the 10 p.m. to 6 a.m. shift, and he completed a narrative report of the incident. Sergeant Letourneau offered Fields protective custody on September 2, 2005, to ensure his safety. Fields signed a release on September 5, 2005, acknowledging that he was offered protective custody, which he declined. Field said he believed he caused the attack because he was "messing with" or "harassing" Officer Sunday, and that Officer Sunday somehow instigated the attack. Fields did not believe that inmate

Smith's attack had anything to do with Smith being a member of the Crips gang. Fields said he did not feel unsafe from the Crips gang members, and acknowledged that Poston did not find out about the incident until September 3, 2005.

Fields believes defendant Poston directed Officer Sunday to destroy the weapon that was used in the September 2 attack. Fields did not hear any conversations between: 1) inmate French and Huffman; 2) Huffman and Poston; and 3) Poston and Sunday. Fields did not tell anyone about his allegations regarding a failure to protect until he filed Grievance 13976, on January 10, 2006.

In November 2005, inmate Peterson approached Fields while he was in the shower. Peterson did not attack Fields. Fields was not injured in this incident, and there was no physical contact between Fields and Peterson. Fields does not know whether Poston ordered this "attempted attack." Fields believes the attempted attack was because Poston took inmate Peterson's job, and he was psychologically messed up about it. Fields did not tell anyone about the incident with inmate Peterson until he filed Grievance 13976 on January 10, 2006.

At approximately 8 p.m. on December 14, 2005, Fields was in the shower when an inmate threw hot water on him. Correctional Officer Spooner called a "condition 30" to notify the rest of the facility of an important security situation that needed urgent attention, and lockdown of the area. Poston was on duty when this attack occurred, and responded to the condition 30 call. When she arrived, she saw inmate Gillen sitting at a table in the dayroom and Fields was in the shower area. Poston picked up a blue belt and a hot pot with no lid. She placed the hot pot on the desk in the officer's area, but did not realize that the hot pot was part of the condition 30. Once she was informed that the hot pot was part of the condition 30, she went to retrieve it from the desk but it was

4

gone. She searched the entire area, cells, showers, trash, laundry carts, but was unable to locate the hot pot.

Immediately after the December 14, 2005 attack, Fields wrote out a statement of what occurred while in the Captain's office. Officers then immediately escorted Fields to the medical clinic. Bea Lyda was a Licensed Practical Nurse at EDCF during the relevant time period. Nurse Lyda notified Kiersten Camp, an Advanced Registered Nurse Practitioner, by phone of Fields's burn. Camp gave Lyda orders regarding Field's treatment. Lyda provided Fields the following treatment: 1) ice compress applied to the affected areas; 2) vital signs taken every fifteen minutes while in the clinic; 3) applied silvadine and a wet compress, and covered with sterile dressing; 4) prescribed 800 mg of ibuprofen four times a day for five days; and 5) ordered Fields to follow up in the morning with sick call. Nurse Lyda completed a nursing protocol flow sheet, which notes that the burn occurred at approximately 9 p.m., and the source of the burn was hot water. Fields had 3-4 inch blister burns on his right shoulder, and 1 1/4 inch blisters on his neck.

After Fields received medical treatment, he went to the response team officer, where photographs were taken of his burns, and he was offered protective custody, which he declined. Fields was returned to his cell by approximately 10:30 p.m. Fields said he requested medical assistance from Himes, who was operating the officers' control booth, when the ibuprofen started to wear off. Himes was not on duty when Fields was attacked. Hines was not told of the attack on Fields. The control center log book did not note that Fields had burns, it only indicated that inmate Gillen had a rope with a lock on the end of it, and attacked Fields.

Fields went to the medical clinic at approximately 5:40 a.m. on December 15, 2005, and was admitted for observation. At 6:41 a.m., Nurse Lyda noted that Fields had second and maybe third

5

degree burns on his ears and behind his ears. She noted that there were more blisters than were apparent on the previous night. She changed the dressing, applied silvadine, and covered his injury with wet dressing and sterile gauze. She gave him 10 mg of Nubain for pain. Dr. Chad Sharp examined Fields at 9:22 a.m., and diagnosed him with second degree burns to the back of the neck, ears, and back, prescribing Bactrim to prevent infection and Nubain for pain. Fields was discharged from the infirmary on December 27, 2005, with the notation that his burns were healing well.

Fields's statement about the December 14, 2005 attack was that he believed his attacker was joining the Crips gang, and that his task was to attack Fields. Fields also proposed the following as reasons for his attack: 1) the Crips gang instigated the attack to assess his fighting skills; 2) Poston hated Fields for turning down her sexual advances; and 3) since the Kansas Supreme Court had just ruled that the death penalty was defective, he was targeted because the State wanted to show the United States Supreme Court that prisoners were starting to kill other prisoners.

Fields said he had no reason to believe the Crips were dangerous to him before or after the December 14 attack. Fields had never met nor had a conversation with the inmate who attacked him on December 14. The inmate who attacked Fields was placed in administrative segregation at 9 p.m. on December 14. After the attack, Captain Smith offered Fields protective custody, which he declined. Fields believed he only needed protection from the inmate who attacked him, inmate Gillen, and not from any other prisoner. While in custody at the El Dorado facility, Fields never asked to be placed in protective custody because he did not think there was any real threat to him.

Fields filed Grievance 13879 on January 10, 2006, claiming he was provided the wrong treatment by Nurse Lyda. A licensed practical nurse, Ms. Salamone, responded to the grievance,

and she confirmed that Nurse Lyda had treated Fields correctly based on his symptoms. Warden Ray Roberts reviewed the grievance, and concurred with Ms. Salamone's response. The Secretary of Corrections Designee mailed its response regarding the grievance to Fields on February 21, 2006. The response indicated that the care and treatment made available to Fields was consistent with prevailing community standards, and his injuries had been treated properly, and his admission to the health care facility was due to the progression of the burn, not a lack of care.

On January 10, 2006, Fields also filed Grievance 13976 claiming that he was targeted for attack three times in four months, the most recent attack occurring when Poston concealed evidence. In response to this grievance, Fields was placed into administrative segregation until he could be moved to another facility. Warden Roberts and the Secretary of Corrections Designee concurred with this response. Fields filed his civil rights complaint on December 13, 2007.

**Statute of Limitations**

Defendants allege that Fields's claims based on injuries sustained prior to December 13, 2005 are barred by the statute of limitations. (Dkt. No. 123 at 19-20). The statute of limitations for § 1983 claims is based on the statute of limitations provided by state law for ordinary personal injury claims - two years in Kansas. *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007)(citations omitted); Kan.Stat.Ann. § 60-513(a)(4). A civil rights action accrues when facts that would support a cause of action are or should be apparent. *Kripp v. Luton*, 466 F.3d 1171 (10th Cir. 2006); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir.1995). The filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 claims. *Roberts*, 484 F.3d at 1241.

Fields filed administrative grievances on January 10, 2006, and the administrative review process concluded on March 20, 2006, which Fields does not dispute. (Dkt. No. 130 at 6-7). He

7

filed his civil rights complaint on December 13, 2007. Fields and the defendants disagree on how time is calculated for purposes of the statute of limitations analysis. Fields maintains that the statute of limitations for his September 2, 2005 injuries did not begin to run until March 20, 2006, when the administrative review process response was mailed to him. Thus, he alleges that he had until March 20, 2008 to file his complaint. The defendants contend that the statute of limitations was tolled between January 10, 2006, which was the date Fields filed the administrative grievance, and March 20, 2006, when the response was mailed to him. (Dkt. No. 132 at 3). Under the defendants's computation, Fields's complaint was filed thirty-one days outside the two year statute of limitations period.

The court finds: 1) Fields's cause of action for the September 2, 2005 attack accrued on September 2, 2005; 2) the statute of limitations was tolled from January 10, 2006, the date he filed the grievance until March 20, 2006, the date the administrative review process concluded; and 3) Fields's complaint was filed outside of the statute of limitations.

In Fields's Response he also alleges that his September 2, 2005 claim is tolled as it is part of a larger set of continuing wrongful acts, therefore it is governed by the "continuing wrong" doctrine (also known as the "continuing violation" doctrine). (Dkt. No. 130 at 7-8). He maintains that the complained of acts did not conclude until the December 15, 2005 attack. Consequently that would have been the date his cause of action accrued. (*Id.* at 8). The defendants disagree with Fields's characterization of his claims as falling under the "continuing wrong" doctrine.

The defendants claim Fields's reliance on the "continuing wrong" doctrine is misplaced based on *Tiberi*. Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury. *Tiberi v. Cigna Corp.*, 89 F.3d 1423,

1430-31 (10th Cir.1996). The continuing wrong doctrine does not apply where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress. *Id.* at 1431.

The continuing violation theory "is a creation of federal law that arose in Title VII cases" and "recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series." *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1513 (10th Cir.1997). To establish a continuing violation, a plaintiff must show that the claimed discriminatory acts that occurred outside the limitations period were sufficiently related to at least one act occurring within the relevant filing period, thereby constituting a continuing pattern of discrimination. *Furr v. AT & T Tech., Inc.,* 824 F.2d 1537, 1543 (10th Cir.1987).

Fields claims the September 2, 2005 claim is tolled as it is part of a larger set of continuing wrongful acts. He says the defendants "continually failing [sic] to protect, respond, and ensure [his] safety from attacks." (Dkt. No. 130 at 7). The defendants rely on two theories to defeat Fields's use of the "continuing wrong" doctrine. First, they allege that Fields failed to cite any authority that this doctrine has ever been applied by the Tenth Circuit to claims brought under 42 U.S.C. § 1983. (Dkt. No. 132 at 4) and they cite *Frazier v. Jordan*, 06-133, 2007 WL 60883, at *4 (10th Cir. 2007) and *Sellers v. Butlers*, 02-3055, 2007 WL 2042513 at *13 as support. Next, they assert that even if the doctrine were to apply in § 1983 cases, the allegations here are not of a continuing violation. (Dkt. No. 132 at 4). The defendants characterize Fields's claims as dealing with three distinct events, and the alleged attacks were all by different inmates with no apparent connection to each other. (*Id.*)

Fields's reliance on the "continuing wrong" doctrine fails to provide the support necessary

9

for allowing him to proceed on the September 2, 2005 claim. As the defendants correctly pointed out the Tenth Circuit has not allowed the "continuing wrong" doctrine to be used with § 1983 claims. *Rassam v. San Juan Coll.Bd.*, No. 95-2292, 1997 WL 253048, at *2-4 (10th Cir.1997). Fields's claim for the September 2, 2005 attack was filed outside the statute of limitations, and is thus time barred. Even if the "continuing wrong"doctrine applied to a § 1983 claim, the court finds the acts Fields complained of, specifically those which occurred on September 2, 2005, November 2005, and December 14, 2005, are not sufficiently related to one another to constitute a pattern, therefore he would not be able to utilize the "continuing wrong" doctrine to avoid time-barring of the September 2, 2005 attack.

**Sovereign Immunity**

The Eleventh Amendment generally bars suit in federal court against states and agencies considered to be arms of the state. *See generally Alden v. Maine*, 527 U.S. 706 (1999). Although parties may bring claims for certain prospective equitable relief against state officials sued in their official capacity, claims for monetary damages are barred. *Ex parte Young*, 209 U.S. 123, 159-60 (1908). The defendants maintain that they are entitled to sovereign immunity, (Dkt. No. 123 at 21), and Fields did not respond to this argument in his Response. (Dkt. No. 130). Judge Carlos Murguia previously held in this case that "[p]laintiff's claims against defendants Poston and Himes in their official capacity are therefore dismissed." (Dkt. No. 41 at 5). This court finds that plaintiff's claims against defendants Huffman, Hixson, and Lambert in their official capacity are likewise to be dismissed.

**Qualified Immunity**

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsythe,* 472 U.S. 511, 526 (1985). Government officials performing discretionary functions are typically eligible for qualified immunity unless two conditions are met: (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time the alleged violation occurred. *Lowry v. County of Riley,* 522 F.3d 1086 (10th Cir. 2008). Once the defendants asserted a qualified immunity defense, the burden shifted to Fields to show the relevant law was clearly established, and to come forward with sufficient facts to show the defendants violated the clearly established law. *Foote v. Spiegel,* 118 F.3d 1416 (10th Cir.1997).

The Eighth Amendment provides that a person shall not be subject to cruel and unusual punishment. U.S. Const. Amend. VIII. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, a prison official is not liable for every injury suffered by an inmate at the hands of another inmate. *Id.* at 834. A prison official is only liable when the injured inmate shows: 1) he is incarcerated under conditions posing a substantial risk of serious harm, and 2) the official is deliberately indifferent to the prisoner's health or safety. *Id.*

The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, a prisoner must show from objective facts that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer* at 834. "The objective component is met if the deprivation is sufficiently serious.'" *Martinez* at 1304 (quoting *Farmer* at 834). In the subjective analysis, the plaintiff must prove that the defendant had a culpable state of mind known as "deliberate indifference." *Id.* "The

subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.*

The court in *Farmer* held the following were defenses to a charge of deliberate indifference: 1) the prison official did not know of the underlying facts indicating a sufficiently substantial danger; 2) the prison official believed the risk was insubstantial or nonexistent; and 3) the prison official responded reasonably to the risk, even if the harm was not ultimately averted. *Farmer* at 844-45. An offer of protective custody tends to refute a claim that prison staff acted with deliberate indifference to a substantial risk of serious harm. *Rider v. Werholtz*, 548 F.Supp.2d 1188, 1198 (D.Kan.2008). Likewise, offering protective custody to an inmate immediately after an attack is a reasonable response to the risk, and frees a defendant from liability, even if the harm was not ultimately averted. *Id.*

**Failure to Protect Claims**

There are no facts in the record that establish that Poston nor Huffman had any knowledge of a risk of harm to Fields prior to the September 2, 2005 incident, therefore that claim fails as a matter of law. Poston and Huffman were never notified by Fields, or anyone, of a risk of harm to Fields.

Fields's claim regarding the November 2005 incident fails. First, Fields did not suffer any injury from the November 2005 incident. No compensatory damages may be awarded in a § 1983 suit absent proof of an actual injury. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). This court has previously held that "a threat to act or an attempt to act that is unsuccessful does not cause an injury. If there is no injury then there is no liability under 42 U.S.C. § 1983." *Brown v. City of Maize*, 07-1178, 2009 WL 872905, at *5 (D.Kan. March 30, 2009). Secondly, there are no facts in the record

12

that establish that Poston or Huffman had any knowledge of a risk of harm to Fields before the November 2005 incident. Two different inmates were involved in the September 2, 2005 and the November 2005 incidents, and there is no evidence they were related. Fields was offered protective custody after the September 2 attack, which he declined, and after the November 2005 incident, which he again declined. There is no evidence that Poston or Huffman knew that an attempted attack was occurring against Fields in November 2005.

If an inmate did not know the assailant before the attack, nor alleged that he had previously been threatened by the assailant, the defendants were not on notice that the inmate was in danger, and could not be deliberately indifferent to the inmate's safety. *Lane v. Klinger*, No. 01-6144, 25 Fed.Appx. 781, 783, 2001 WL 1580988, at *1 (10th Cir. 2001). Inmate Gillen attacked Fields on December 14, 2005, and Fields said had never met Gillen prior to the attack nor had he had any trouble with him. Fields said he was unaware of any threat to him from the Crips gang or of any affiliation between Gillen and the Crips. Fields declined protective custody after the attack. There are no facts in the record that establish that Poston or Huffman, or even Fields, had any knowledge of a risk of harm to Fields before the December 14, 2005 attack. Fields's claim regarding the December 14, 2005 attack fails.

**Inadequate Medical Treatment Claims**

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Deliberate indifference" contains both objective and subjective components. *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006). The objective component requires that the medical need be sufficiently serious, meaning that it is "one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component requires that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). Nonetheless, disagreements with the treatment provided by prison medical staff, or the inadvertent or negligent failure to provide medical care are insufficient to show the deliberate indifference required for an Eighth Amendment violation. *See Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999).

A delay in medical treatment can constitute an Eighth Amendment violation only if the delay itself results in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt v. Uphoff*, 199 F.3d 1220,1224 (10th Cir.1999). Every twinge of pain suffered as the result of a delay in medical care is not actionable. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). An inmate's complaint that he needed additional medication, other than that prescribed by the treating physician, is not sufficient to state a constitutional violation. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992).

Fields alleges that the defendants's failure to summon medical staff or aid him regarding his medical needs rose to the level of deliberate indifference. He maintains the defendants were aware

14

of his deteriorating condition: "[p]laintiff made repeated calls to the control room, and he was yelling and screaming in his cell for help, all of which were ignored. Instead the guards instructed that they would get back to him, but they never did. As time wore on, Plaintiff's injuries became sufficiently serious and lead to the nurse noting in the morning that 'there were more blisters than the night before.'" (Dkt. No. 130 at 12).

It is undisputed that Fields received medical treatment immediately after he was attacked on December 14, 2005. He was treated and prescribed 800 mg of ibuprofen for the pain, and was returned to his cell for the evening. The nurse ordered that Fields return to the clinic the next morning, which there is no dispute that the guards returned Fields to the clinic at 5:40 a.m. on December 15, 2005. Fields's complaint centers around the alleged failure of the defendants to get him additional pain medicine on the evening of December 14, after he had been medically cleared to return to his cell.

Plaintiff fails to establish that defendants were deliberately indifferent under both an objective and subjective analysis. The defendants maintain Fields did not show he suffered a significant injury caused by any delay in medical treatment. (Dkt. No. 132 at 6). Fields alleged that he suffered additional pain based on the defendants failure to provide him with pain medicine and/or return him to the clinic on December 14, 2005. There is no evidence that Fields suffered any injury caused by the delay from approximately 10:00 p.m. until approximately 6:00 a.m. the next morning when he was escorted back to the medical clinic. Fields did not produce any evidence that as a result of the delay that he suffered a significant injury; in fact, the record only supports a claim of additional pain for a matter of eight hours.

There are no facts in the record that Himes, Hixson or Lambert knew of an excessive risk to Fields's health and disregarded it. Fields did not produce any evidence that Himes, Hixson or Lambert knew of his request for pain medicine on December 14, 2005, or that they ignored the request, creating an excessive risk to Fields's health.

Under these circumstances, the court finds that Fields fails to establish an Eighth Amendment claim. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. Second, there is no evidence of defendants knowingly disregarding a risk to plaintiff's health. Fields did not produce any evidence that a more timely receipt of medical treatment would have minimized or prevented his pain. *See Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006)(inmate must show that the more timely receipt of medical treatment would have minimized or prevented the intermediate injury). His complaint that he needed additional medication other than that prescribed by the treating physician is not sufficient to state a constitutional violation. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992). There is no claim that the defendants interfered with the medical treatment prescribed and no evidence that they refused to provide Fields with a prescription that had been ordered by medical personnel. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

IT IS ACCORDINGLY ORDERED THIS 20th day of August, 2010, that plaintiff's request for relief under Rule 56(f) is hereby denied and the defendants's motion for summary judgment (Dkt. No. 122) is granted.

    <u>s/ J. Thomas Marten      </u>
J. THOMAS MARTEN, JUDGE